# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BUSINESS LEADERS IN CHRIST,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNIVERSITY OF IOWA, *et al*.,<br><br>*Defendants*. | Civil Action No. 17-cv-00080-SMR-SBJ<br><br>**REPLY BRIEF IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**(Expedited relief before January 24, 2018 requested.)** |

Matt M. Dummermuth
Hagenow & Gustoff, LLP
600 Oakland Rd. NE
Cedar Rapids, IA 52402
(319) 849-8390 phone
(888) 689-1995 fax
*mdummermuth@whgllp.com*

Eric S. Baxter*
*Lead Counsel*
Daniel H. Blomberg*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC, 20036
(202) 955-0095 phone
(202) 955-0090 fax
*ebaxter@becketlaw.org*
*dblomberg@becketlaw.org*

*Counsel for Plaintiff*

*Admitted pro hac vice

On campus, the University has moved forward with revoking BLinC's registered status. *See* Second Estell Decl. ¶ 11, Ex. A (email ending access to student fair and other benefits). Yet in court, the University barely musters a defense. Instead of addressing the relevant facts, it details the student activity fees BLinC has used and the student fairs it has attended, not even attempting to suggest their relevance. *Cf. id*. ¶¶ 2-14. And instead of addressing pertinent cases, it rattles off a few scattered and often irrelevant principles on one topic, with a one-sentence conclusion that the University has done no wrong, then moves to the next topic and repeats. As the University's weak defense shows, this is not a close case. Its targeting of BLinC is a gross violation of the First Amendment and should immediately be enjoined.

## ARGUMENT

The University urges a heightened standard for injunctive relief because its Human Rights Policy supposedly was "'developed through presumptively reasoned democratic processes.'" Dkt. 18-1, Opp. 7 (quoting *Planned Parenthood v. Rounds*, 530 F.3d 724 (8th Cir. 2008)). But *Planned Parenthood* itself says that the heightened standard presumptively applies "only in a case . . . where a preliminary injunction is sought to enjoin the implementation of a duly enacted state [or federal] statute." *Id*. at 732 & n.6. "[C]ity ordinances" and "administrative actions by federal, state or local government agencies" get the higher standard only if a court, having "examined the circumstances," determines that "the challenged action represents 'the full play of the democratic process.'" *Id*. at 732 n.6 (citation omitted). The University's policy comes nowhere near that standard just because it has a Board of Trustees "appointed by the Governor" with authority "to create an operations manual." Opp. 8. In any case, BLinC meets the higher standard. But it is only *required* to show a "fair chance" of success on the merits. *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1039-40 (8th Cir. 2016).

**I. BLinC is likely to succeed on its First Amendment Claims.**

    **A. The Free Speech Clause prohibits the University from deregistering BLinC.**

The University's response brief barely responds. It does not dispute that it encourages "like-minded" students to form groups, Dkt. 7-2, Baxter Decl. ¶ 2, Ex. A at 1; that groups can limit membership to those who embrace the group's "goals and beliefs," *id.* at 2; or that such groups are regularly registered by the University and receive University benefits, *id.* at 1. It does not retract its admissions that registration is no endorsement, *id.*, and that it has no right to tell groups whom to select as leaders. Dkt. 7-4, Estell Decl. ¶¶ 10, 18-21; Dkt. 7-3, Colby Decl. ¶ 6, Ex. 1. Nor does the University deny that, on these facts, it has created a limited forum and must treat all campus groups on equal terms. Finally, it ignores entirely the many Eighth Circuit cases holding that deregistering a student group because of its views is a free speech violation. *See* Dkt. 7-1, BLinC Br. 12-13, 16. By failing to respond to these issues, the University has conceded them. *See U.S. v. Brooks*, 175 F.3d 605, 606-07 (8th Cir. 1999) (failure to brief "is deemed abandonment of issue").[1]

Instead, the University claims—with no analysis—that it "has the right to recognize groups only if they abide by its policies." Opp. 9, 11. But that is precisely the argument repeatedly rejected in the cases the University ignores. In *Healy v. James*, for example, the Supreme Court rejected a state school's effort to de-register a group because its "philosophy of violence and disruption" was "counter to the official policy of the college." 408 U.S. 169, 187 (1972). The Court held that a public school "may not restrict speech or association simply because it finds the views expressed by any group to be abhorrent." *Id.* 187-88. Similarly, the student group in *Gerlich v. Leath* violated Iowa State's policy against the use of University trademarks in connection with illegal drugs, yet

---

[1] *U.S. v. Echols*, 144 F.3d 584, 585 n.2 (8th Cir. 1998) ("issues are waived" where "no argument or authority"); *In re Wiley*, 184 B.R. 759, 764 (N.D. Iowa 1995) ("insufficiently developed argument or skeletal argument" can constitute waiver); *Anderson v. Newmar Corp.*, 319 F. Supp. 2d 943, 948 (D. Minn. 2004) (party who "fail[ed] to respond to [an] argument in his opposition brief . . . concede[s]" the argument).

the Eighth Circuit protected that group's registration. 861 F.3d 697, 703-04 (8th Cir. 2017). And in *Cuffley v. Mickes*, a nondiscrimination policy was also insufficient reason to exclude a group from a state program, because exclusion would violate the group's "freedom of political association" and "interfere with [its] message." 208 F.3d 702, 708 (8th Cir. 2000).

By ignoring these cases, the University essentially concedes that they dictate judgment in BLinC's favor. Indeed BLinC's claims are even stronger than the claims in the cited cases because BLinC does not violate the University's policy at all. It is undisputed that membership in BLinC is open to all. Dkt. 7-5, Thompson Decl. ¶ 3, Ex. A; Dkt. 7-4 Estell Decl. ¶ 29, Ex. D. And BLinC's leaders are screened only based on religion, which the University concedes is acceptable. Dkt 7-3, Colby Decl. ¶ 6, Ex. 1 ("Asking prospective members to sign [a] statement of faith would not violate the UI Human Rights Policy."); Dkt. 7-4, Estell Decl. ¶¶ 19-23 (BLinC told it could select leaders based on its tenets); Dkt. 7-2, Baxter Decl. ¶ 2, Ex. A at 1 (promising registration will not be denied or withdrawn on the basis of religion or creed).

BLinC was deregistered because of its speech. Dkt. 7-4, Estell Decl. 33, Ex. G ("The Statement of Faith, on its face, does not comply. . . ."). Even its leadership requirements—at their core—are speech. *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 201 (2012) (Alito, J., joined by Kagan, J., concurring) (control over leaders "is an essential component of [group's] freedom to speak in its own voice"). The misapplication of University policy thus "grates on the First Amendment, for it amounts to nothing less than a proposal to limit speech in the service of orthodox expression." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 579 (1995) ("[A]pplying the state [non-discrimination] law to expressive conduct" is "a decidedly fatal objective."); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 654 (2000) (non-discrimination law may not "interfere with the Boy Scouts' choice not to propound a point of view contrary to its beliefs").

**B. The Religion Clauses prohibit the University from deregistering BLinC.**

The University also concedes that the ministerial exception protects "religious group[s]" from having an "unwanted minister" imposed by the University. Opp. 10. And it does not dispute that BLinC qualifies as a religious group and that its leaders qualify as ministers. BLinC Br. 22-25. Thus, the University concedes judgment for BLinC on this claim. *Id.* at 21-22.

The University's only protest is that BLinC "seemingly argues that all individuals of its group are ministers." Opp. 11. Not so. While membership is open to anyone, only BLinC's *leaders* are expected to "live [its] religious beliefs" and "provide spiritual leadership for the organization, including leading prayer and Bible study . . . and ministering to others." Dkt. 7-4, Estell Decl. ¶ 29, Ex. D. These *leaders* thus have the requisite "role distinct from that of most of [the group's] members," triggering the ministerial exception. *Hosanna-Tabor*, 565 U.S. at 191.

The University never attempts to rebut BLinC's other Free Exercise claims regarding religious targeting and discrimination. *Compare* BLinC's Br. 26-28 *with* Opp. 11-12. Nor could it, since the University has explicitly targeted BLinC's Statement of Faith. BLinC Br. 17-20.

**C. The University fails to meet its burden to show that its actions pass strict scrutiny.**

The University fails to defend its actions from strict scrutiny. And the University's own conceded disregard of its policy in athletics, fraternities and sororities, scholarships, and programming—where it openly discriminates on the bases of sex, race, national origin, sexual orientation, and other protected categories, BLinC Br. 17-20—only underscores that it has no legitimate interest in applying the policy to BLinC's internal religious speech.

The University briefly argues that it has an interest in upholding the Fourteenth Amendment right to same-sex marriage. Opp. 14-15. But this case does not concern the right to same-sex marriage. Further, the Fourteenth Amendment provides "a right to be free from *government*

discrimination," which has "no application to an [internal] action by a private religious organization directed against a minister." *Demkovich v. St. Andrew the Apostle Parish*, 2017 WL 4339817, at *5 (N.D. Ill. Sept. 29, 2017) (emphasis added). And even if there were a conflict, "the First Amendment has struck the balance" in favor of granting a religious group freedom to choose both "those who will guide it on its way" and the content of its "faith and doctrine." *Hosanna-Tabor*, 565 U.S. at 186, 196; BLinC Br. 22-27.

Finally, the University argues that BLinC sold its right to avoid "State . . . interfer[ance] with [its] leadership choices and tenets" by "accept[ing] State funding." Opp. 16. But the Supreme Court recently held that over five decades of precedent rejects that position: "It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017).

## II.     The remaining factors all weigh in favor of granting injunctive relief.

*Irreparable harm.* The University does not contest that ruling for BLinC on the merits satisfies the irreparable harm prong. BLinC Br. 28-29.

*Balance of harms.* The University says BLinC must be derecognized to have a "nondiscriminatory environment on campus," but admits that "certain nondiscrimination laws" do not apply "to religious groups," does nothing to distinguish BLinC from fraternities and sororities, and does not explain why its new interpretation of its policy is now suddenly necessary. Opp. 12.

*Public interest.* The University's public interest arguments are irrelevant or rebutted above, and do not address BLinC's arguments. BLinC Br. 30.

## CONCLUSION

BLinC respectfully urges the Court to grant its application for a preliminary injunction.

5

Respectfully submitted this 12th day of January, 2018.

/s/ *Eric S. Baxter*
Eric S. Baxter (*pro hac vice*)
   *Lead Counsel*
Daniel H. Blomberg (*pro hac vice*)
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC, 20036
(202) 955-0095 PHONE
(202) 955-0090 FAX
*ebaxter@becketlaw.org*
*dblomberg@becketlaw.org*

Matt M. Dummermuth
Hagenow & Gustoff, LLP
600 Oakland Rd. NE
Cedar Rapids, IA 52402
(319) 849-8390 phone
(888) 689-1995 fax
*mdummermuth@whgllp.com*

*Counsel for Plaintiff*